IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**MICHELLE SAMPSON, ET AL.**
*Plaintiff/Appellant,*

*v.*

**SURGERY CENTER OF PEORIA, LLC, ET AL.**
*Defendants/Appellees.*

No. CV-20-0024-PR
Filed July 30, 2021

Appeal from the Superior Court in Maricopa County
No. CV2013-015707
The Honorable Hugh E. Hegyi, Judge (Retired)
The Honorable James Blomo, Judge (Retired)
**AFFIRMED**

Memorandum Decision of the Court of Appeals
Division One
1 CA CV-18-0113
Filed December 26, 2019
**VACATED**

COUNSEL:

Arthur E. Lloyd (argued), A. Evan Lloyd, Lloyd Law Group of Arizona, P.L.L.C, Payson, Attorneys for Michelle Sampson

DeeDee Armer Holden, Michael J. Ryan (argued), Holden & Armer, P.C., Phoenix, Attorneys for Surgery Center of Peoria, LLC

Eileen Dennis GilBride, Jones, Skelton & Hochuli, P.L.C., Phoenix, Attorneys for Amicus Curiae Mutual Insurance Company of Arizona

Peter R. Montecuollo, Shook, Hardy & Bacon, L.L.P., Kansas City, MO; and Philip S. Goldberg, Shook, Hardy & Bacon, L.L.P., Washington, DC, Attorneys for Amicus Curiae American Medical Association and Arizona Medical Association

David L. Abney, Ahwatukee Legal Office, P.C. Phoenix, Attorney for Amicus Curiae Arizona Association for Justice/Arizona Trial Lawyers Association

———————————

JUSTICE BOLICK authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES LOPEZ, BEENE, and MONTGOMERY joined.[*]

———————————

JUSTICE BOLICK, Opinion of the Court:

¶1        We hold today that a jury in a medical malpractice case may not be left to "infer" causation without the guidance of expert testimony where the cause of death is disputed and not obvious to an ordinary person.

## BACKGROUND

¶2        Although the legal issue on which we granted review is narrow, precise, and properly decided as a matter of law, the parties have focused primarily on disputed factual issues that are unnecessary and improper for us to resolve.[1]  As the case was decided in the trial court on a

_____

[*]  Although Justice Andrew W. Gould (Ret.) participated in the oral argument in this case, he retired before issuance of this opinion and did not take part in its drafting.

[1] The Surgery Center did not provide a supplemental brief after we granted review.  In a case with a dense and extensive record in which the sufficiency of expert testimony is at issue, it is highly advisable for a party (particularly

motion for summary judgment, "we view the facts and reasonable inferences in the light most favorable to the non-prevailing party," *Rasor v. Nw. Hosp., LLC*, 243 Ariz. 160, 163 ¶ 11 (2017), which is the plaintiff here.

¶3        In March 2012, Sampson took her four-year-old son, Amaré Burks, to the Surgery Center of Peoria, an outpatient surgery clinic, for a scheduled tonsillectomy and adenoidectomy. The procedure is considered routine and has an extremely low complication rate. Dr. Guido administered the general anesthesia, and Dr. Libling performed the procedure. Dr. Libling remained in the operating room with Amaré for about thirty minutes after the surgery. At that point, Amaré was sitting up and crying and was transferred to a post-operative anesthesia care unit (PACU).

¶4        Nurse Kuchar attended Amaré in the PACU. Amaré drank apple juice and asked for a toy but, according to his mother, appeared sleepy and uncomfortable. After sixty-one minutes, Nurse Kuchar released Amaré to his mother's care. He scored eight of eight on a vitals-release test, and his condition did not appear concerning.

¶5        Sampson took Amaré home and put him to bed. She had been told it was typical for a patient to sleep after surgery. Approximately two hours after Amaré's discharge, Sampson checked on him, and he was not breathing. Emergency personnel were unable to revive him.

¶6        Sampson brought a wrongful death action against several defendants, including the Surgery Center and Dr. Guido. As required by A.R.S. § 12-2603, Sampson identified Dr. Greenberg as her expert witness to establish cause of death, proximate cause, and standard of care.

¶7        In his initial affidavit, Dr. Greenberg attested that (1) one hour was insufficient to assess a pediatric patient for discharge and that three hours was appropriate, especially for a child with a history of sleep apnea; (2) the anesthesiologist fell below the standard of care by discharging Amaré before that time and Amaré's death could have been prevented with longer observation in the PACU; and (3) Amaré died from being rendered unable to breathe from the after-effects of surgery and anesthesia, as his

the party that lost in the court of appeals) to accept our invitation to further brief the specific questions on which we granted review.

pharyngeal tissues were swollen and obstructed his upper airway, and the residual effects of anesthesia did not allow him to awaken to overcome the obstruction.  In his deposition, Dr. Greenberg opined that the standard of care required between one and three hours of observation before release.

¶8          The Surgery Center and Dr. Guido filed motions for partial summary judgment, contending that expert testimony did not establish that their actions proximately caused Amaré's death.   At oral argument, Sampson's counsel argued that Dr. Greenberg's standard-of-care testimony was sufficient to establish causation.  Pressed by the trial court to identify the expert opinion to that effect, counsel acknowledged that ordinarily a plaintiff must prove the causal connection through expert testimony "unless the connection is readily apparent to the trier of fact.  And that's my contention, that this is obvious."

¶9          The trial court granted partial summary judgment for the Surgery Center and Dr. Guido, finding that Dr. Greenberg's testimony failed to state a causal connection between the Surgery Center's actions and omissions and Amaré's death,   and that whether Amaré would have survived with longer observation involved "matters committed to the expertise of medical practitioners, and well beyond the ken of the average juror."  The court later entered final judgment against Sampson, and she appealed.

¶10          The court of appeals reversed as to the Surgery Center. *Sampson v. Surgery Ctr. of Peoria, LLC*, No. 1 CA-CV 18-0113, 2019 WL 7187252, at *1 (Ariz. App. Dec. 26, 2019) (mem. decision).  Applying *Barrett v. Harris*, 207 Ariz. 374, 378 ¶ 12 (App. 2004), the court articulated the baseline principle that "[c]ausation in a medical malpractice action must be proved by expert testimony unless the connection between the conduct and the injury is readily apparent." *Sampson*, 2019 WL 7187252, at *2 ¶ 9.  The court concluded that "[w]hile expert testimony on causation is often necessary, we perceive no such necessity here."   *Id.* at *4 ¶ 14. Acknowledging that Dr. Greenberg's testimony was "varying widely" between one to three hours of observation, the court determined that "a reasonable jury could nonetheless find that the standard of care for observation was three hours." *Id.* at *3 ¶ 13.  If it did, the jury "could properly infer that the early discharge was the probable cause of Amare's death." *Id.*

**¶11** We granted review to determine whether the court of appeals erred by holding that the jury could properly infer proximate cause under the facts presented.[2] Whether expert testimony regarding causation is required in a medical malpractice case is a recurring issue of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

**¶12** "Apart from issues of statutory interpretation, which we review de novo, we review trial court determinations of expert qualifications for an abuse of discretion." *Rasor*, 243 Ariz. at 163 ¶ 11 (quoting *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 387 ¶ 30 (2013)).

**¶13** In Arizona medical malpractice cases, causation must be established by competent expert testimony, and the narrow exception is that a jury may infer such causation if malpractice is "readily apparent." *Id.* at 166 ¶ 32; *see also Seisinger v. Siebel*, 220 Ariz. 85, 94 ¶ 33 (2009) (noting that, absent expert testimony, plaintiff could not meet the burden of production under the common law "except when it was 'a matter of common knowledge . . . that the injury would not ordinarily have occurred if due care had been exercised'") (quoting *Falcher v. Saint Luke's Hosp. Med. Ctr.*, 19 Ariz. App. 247, 250 (1973)). As the court of appeals here departed from that standard to allow a jury to determine causation based on speculation built upon inference, we reverse its decision.

**¶14** A plaintiff establishes medical malpractice by proving that (1) "[t]he health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances," and (2) "[s]uch failure was a proximate cause of the injury." A.R.S. § 12-563. The second requirement is at issue here.

**¶15** Regarding causation, a plaintiff must show "a natural and continuous sequence of events stemming from the defendant's act or omission, unbroken by any efficient intervening cause, that produces an injury, in whole or in part, and without which the injury would not have

---

[2] We improvidently granted review of whether Dr. Greenberg was qualified to establish the standard of care for Nurse Kuchar. That issue was neither before the trial court nor the court of appeals, and we therefore dismiss review of that question.

occurred." *Barrett*, 207 Ariz. at 378 ¶ 11. Moreover, a plaintiff must show that causation is probable, not merely speculative. *Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 546 (1990).

**¶16** As medicine in general and, more specifically, advanced medical techniques involve extensive professional training, in most instances the applicable standard of care, and the probable consequences of failing to meet that standard, are beyond ordinary lay knowledge. Therefore, in a medical malpractice case, "the standard of care normally must be established by expert medical testimony." *Seisinger*, 220 Ariz. at 94 ¶ 33. Thereafter, "[t]o establish the requisite causal connection, the plaintiff's expert is generally required to testify as to *probable* causes of the plaintiff's injury." *Benkendorf v. Advanced Cardiac Specialists Chartered*, 228 Ariz. 528, 530 ¶ 8 (App. 2012). This Court has recognized that "the requirement of expert testimony in a medical malpractice action is a substantive component of the common law governing this tort action," *Seisinger*, 220 Ariz. at 95 ¶ 38, and that "failure to produce such a witness results in judgment for the defendant," *id.* at 94 ¶ 35.

**¶17** Here, the plaintiff satisfied the first requirement of § 12-563 by providing a competent expert witness, Dr. Greenberg, who opined that Surgery Center and Dr. Guido fell below the requisite standard of care. However, he equivocated over the applicable standard, providing a range from one hour of post-operative observation, which the Surgical Center satisfied, to up to three hours, which it did not. More significantly, Dr. Greenberg did not opine that insufficient observation was the probable proximate cause of Amaré's death. Rather, he opined that greater observation "could have" allowed Surgery Center personnel to resuscitate Amaré.

**¶18** Acknowledging the "deficits and contraindications" in Dr. Greenberg's testimony, the court of appeals nonetheless concluded that if the jury "were to agree that the standard of care was breached as to time, then no expert evidence would be necessary to permit it to infer that a discharge in violation of that standard was the probable cause of a death that occurred within the time the child should have been observed under the standard of care." *Sampson*, 2019 WL 7187252, at *3–4 ¶¶ 13–14. In other words, a jury may infer causation even where the expert could not, or would not, state a precise standard of care nor state that the Surgery Center's deficiency in adhering to the standard of care was the probable proximate cause of the death.

**¶19** Causation by inference is far more limited than the court of appeals recognized. The standard of care must be established by expert medical testimony "[u]nless malpractice is grossly apparent," *Rasor*, 243 Ariz. at 163 ¶ 12, and expert causation testimony is necessary unless causation is "readily apparent to the jury on the facts," *id.* at 166 ¶ 32. In a case where the standard of care or the cause of death is disputed on a matter requiring medical knowledge to resolve, it is difficult, if not impossible, to imagine a situation where lay jurors, untrained in medicine or medical procedure, could properly determine liability absent expert guidance. *See, e.g.*, *W. Bonded Prods. v. Indus. Comm'n of Ariz.*, 132 Ariz. 526, 527 (App. 1982) ("A lay person does not possess the knowledge necessary to make an accurate diagnosis or to describe a condition's etiology. Even a logical interpretation of events surrounding the . . . incident . . . , when made by a layman, is no more than speculation.").

**¶20** A case comparison is instructive. *Morrison v. Acton*, which involved a dentist who left a piece of metal imbedded in a patient's jawbone that subsequently resulted in severe injury, is a classic example of a case where a jury could properly infer that the dentist's negligence was the proximate cause. 68 Ariz. 27, 33 (1948). By contrast, *Spielman v. Industrial Commission of Arizona* involved an injury related to multiple surgeries, in which "[l]ay logic alone" could not determine the relationship between the surgeries and injury. 163 Ariz. 493, 497 (App. 1989). When the expert failed to commit to a causation opinion, the court held that the proper result was dismissal. *Id.* at 496–97.

**¶21** In this case, expert testimony establishing causation was essential. Disagreement existed even over the cause of Amaré's death. Whereas the autopsy report stated that Amaré died from a "disseminated Strep Group A" infection, Dr. Greenberg opined he died from a "swollen and obstructed upper airway" combined with his inability "to breathe from the after-effects of surgery and anesthesia." Given that even the medical experts did not agree on the cause of death, it is unrealistic to conclude, as the court of appeals did, that a jury "could properly infer that the early discharge was the probable cause of Amare's death." *Sampson*, 2019 WL 7187252, at *3 ¶ 13.

**¶22** As the trial court observed, even if Dr. Greenberg's testimony established that three hours of observation constituted the standard of care, "lay jurors are not competent to determine that Amare' would have

7

exhibited symptoms of distress during those three hours, what those symptoms would have been, what a reasonable schedule of observation in such a center would have been, whether the Surgery Center would or should have noticed Amare's distress had it observed that schedule, and, if it had noted distress, what could have been done in a timely manner to save Amare'." As a result, Sampson did not establish that the failure to observe Amaré for a longer period caused his death by starting a natural and continuous sequence of events, unbroken by any intervening causes. *See Barrett*, 207 Ariz. at 378 ¶ 11.

¶23     Thus, even if Dr. Greenberg's testimony regarding causation is generously read to require a three-hour observation period, his failure to connect the dots between the premature discharge and Amaré's death would leave the jury to infer that Surgery Center's failure to observe was the proximate cause. "Such causation must be shown to be [p]robable and not merely [p]ossible, and generally expert medical testimony that a subsequent illness or disease 'could' or 'may' have been the cause of the injury is insufficient." *Kreisman v. Thomas*, 12 Ariz. App. 215, 218 (1970); *accord Robertson*, 163 Ariz. at 546 (recognizing that causation cannot be left to jury speculation). Dr. Greenberg's assertion that a longer observation period *could* have prevented Amaré's death is therefore insufficient as a matter of law to prove causation. *See, e.g.*, *Gregg v. Nat'l Med. Health Care Servs., Inc.*, 145 Ariz. 51, 54 (App. 1985) (holding that plaintiff must prove a causal relationship between defendant's actions or omissions and the death).

¶24     For the foregoing reasons, the trial court did not err by granting partial summary judgment.

**CONCLUSION**

¶25     We affirm the trial court's ruling and vacate the court of appeals' decision.